UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| VICTOR ALFONZO GREGORIO GOYO MARTINEZ,<br><br>    Petitioner,<br><br>v.<br><br>MARCELLO VILLEGAS, et al.,<br><br>    Respondents. | No. 1:25-CV-256-H |

### ORDER

    Victor Goyo Martinez, a native and citizen of Venezuela, was apprehended at the border in 2021 and released into the United States. In November 2025, he was arrested for drunk driving and was placed in immigration detention pending removal. He has not received a bond hearing because of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that "applicants for admission" must be detained without bond under Section 1225(b)(2)(A) of the INA. He now petitions this Court for a writ of habeas corpus, alleging that his detention without bond violates the INA and the Due Process Clause. Dkt. No. 1.

    But his argument fails on multiple levels. First, it flatly contradicts the statute's plain language. As an "alien . . . who arrives in the United States" and as "[a]n alien present in the United States who has not been admitted," he is an "applicant for admission" subject to Section 1225's mandatory-detention provision. Second, the history of legislative changes confirms this result. Previously, aliens who entered illegally without inspection received more rights than aliens who entered lawfully. By defining "applicant for admission" to include all aliens who have not been admitted and mandating detention for this category,

Congress eliminated the prior incentives to enter illegally.  Finally, common sense supports this conclusion.  The law, in Goyo Martinez's reading, would mandate detention for aliens who lawfully apply for admission, are caught at or near the border, or seek admission after entering illegally—while aliens who are able to enter illegally and remain undetected for years are entitled to potential release after being caught.  The INA, unsurprisingly, does not bestow heightened procedural protections to illegal aliens based on their stealth and impenitence.

As an "applicant for admission," Goyo Martinez must be detained without bond under Section 1225(b)(2)(A).  And his due process claim—whether substantive or procedural—fails, too.  Accordingly, the petition (Dkt. No. 1) is denied.

**1. Background**

In 2021, Goyo Martinez illegally entered the United States at or near Del Rio, Texas.  Dkt. No. 8 at 7.  Amidst a wave of illegal entries across the Texas border and a resulting lack of space to hold detainees, ICE released Goyo Martinez into the United States.  Dkt. No. 7 at 6.  Later that year, Goyo Martinez applied for asylum.  Dkt. No. 1 ¶ 47.  In March 2023, ICE placed Goyo Martinez into removal proceedings with the issuance of a Notice to Appear.  Dkt. No. 8 at 5.  The Notice to Appear charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* at 7; *see* 8 U.S.C. § 1182(a)(6)(A)(i).  His removal proceedings are still underway.  *See* Dkt. No. 8 at 11–12.  In November 2025, ICE encountered Goyo Martinez after he was arrested in Carrollton, Texas for driving while intoxicated.  *Id.* at 5.  He was immediately placed in

detention at the Bluebonnet Detention Center in Anson, Texas, where he was detained at the time this petition was filed. *Id.*[1]

Goyo Martinez is held without bond and neither requested nor received a bond hearing. Dkt. No. 1 ¶ 18. That is because the BIA's recent opinion in *Yajure Hurtado* holds that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. at 220.[2]

Instead, Goyo Martinez filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states two claims for relief. First, he alleges that his detention without bond violates the INA. *Id.* ¶¶ 51–53. He argues that Section 1225(b)(2)(A) does not apply to aliens who, like him, previously entered the United States illegally and have been living in the country prior to being apprehended and placed in removal proceedings. *Id.* ¶¶ 26, 52. In Goyo Martinez's view, the proper statutory authority for his detention is Section 1226(a), which permits IJs to release aliens on bond while their removal is pending. *Id.* Besides his statutory claim, Goyo Martinez also contends that his detention without bond violates his due process rights. *Id.* ¶¶ 54–57.

---

[1] Shortly after Goyo Martinez filed his petition, ICE transferred him to the Karnes County Immigration Processing Center, located in the Western District of Texas. *See id.* Because Goyo Martinez was detained in this district at the time his petition was filed, this Court retains jurisdiction. *See Smith v. Fleming*, No. 4:02-CV-440, 2002 WL 31114021, at *2 (N.D. Tex. Sept. 20, 2002).

[2] Typically, a "person seeking habeas relief must first exhaust available administrative remedies." *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir 2018). The respondents do not raise exhaustion in their answer, and an exhaustion requirement in this context is likely prudential, not jurisdictional. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion only for a "final order of removal"). That said, it would be "an exercise in futility" for Goyo Martinez to appeal to the BIA. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). The BIA issued *Yajure Hurtado* on September 5, 2025. Given the recency, there is little prospect that the BIA would reconsider *Yajure Hurtado* here. Thus, Goyo Martinez's habeas petition does not present an exhaustion problem. *See id.*

The Court ordered the respondents to show cause why Goyo Martinez's petition should not be granted. Dkt. No. 3; *see* 28 U.S.C. § 2243. The respondents answered (Dkt. Nos. 7; 8) and Goyo Martinez replied (Dkt. No. 9). The petition is now ripe for review.

**2.    Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

**3.    Analysis**

As noted above, Goyo Martinez raises two claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, and another based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 51–57. His arguments are similar, if not identical, to those the Court rejected in *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025). Even so, the Court considers the arguments raised in Goyo Martinez's briefing to address whether the bond-less detention of aliens present in the United States without admission violates the INA or the Constitution. On both counts, the answer is no.

### A. The INA authorizes Goyo Martinez's detention without bond.

Goyo Martinez's claim under the INA involves the interplay between two related statutes. First is Section 1225(b)(2)(A), the INA's mandatory-detention provision. That provision sets out detention requirements for "applicant[s] for admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Specifically, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* Subject to certain narrow exceptions discussed below, Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Nothing in Section 1225 "says anything whatsoever about bond hearings." *Id.*

Section 1226(a), on the other hand, permits discretionary detention. "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Instead of detention, the Attorney General "may" release the alien on bond, "[e]xcept as provided in subsection (c)." *Id.* § 1226(a), (2)(A)–(B). Section 1226(c) in turn requires the Attorney General to "take into custody any alien" who is inadmissible or removable for involvement in certain criminal offenses. *Id.* § 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 303. If Section 1226(c) does not apply, and if an alien is released on bond pending removal, the Attorney General may still re-detain him "at any time." 8 U.S.C. § 1226(b).

The respondents only justify Goyo Martinez's detention under Section 1225(b)(2)(A). *See* Dkt. No. 7 at 7–15. The question, then, is whether Goyo Martinez—

who surreptitiously crossed the border without inspection and has resided in the United States for several years—is an "applicant for admission." 8 U.S.C. § 1225(b)(2)(A). If so, he "shall be detained" without bond. *Id.* If not, he is entitled—at the very least—to a bond hearing under Section 1226(a).

### i. As an "applicant for admission," Goyo Martinez is subject to mandatory detention without bond under Section 1225(b)(2)(A).

As always, the Court "begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Here, the text is as unambiguous as can be. Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Goyo Martinez is an "alien." He is "present in the United States." He is an arriving alien because he was apprehended at the border and released into the United States. *See id.* § 1182(d)(5)(A) (defining arriving aliens as applicants for admission). In addition, he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* §§ 1101(a)(13)(A)–(B) (defining "admission" and "admitted"). As an "applicant for admission" who "is not clearly and beyond a doubt entitled to be admitted," Goyo Martinez "shall be detained" under Section 1225(b)(2)(A). He is not entitled to a bond hearing.

Goyo Martinez resists this straightforward conclusion. First, as he sees it, he is not covered under the category of aliens seeking admission because his ongoing asylum application is merely "a lawful means to *remain* here." Dkt. No. 1 ¶ 41 (quoting *Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 71 (D.N.H. 2025) (further quotation omitted)) (emphasis added). To the extent Goyo Martinez was paroled under Section 1182(d)(5)(A),

his subjection to mandatory detention is obvious.³  Section 1182(d)(5)(A) does not permit a neat distinction between aliens who are arriving in the literal sense and aliens who are trying to "remain" while on parole.  Instead, the statute reads that parole "shall not be regarded as an admission of the alien" and that the alien "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 288 (discussing Section 1182(d)(5)(A)).  The INA's implementing regulations confirm this, stating that "[a]n arriving alien remains an arriving alien even if paroled pursuant to [Section 1182(d)(5)], and even after any such parole is terminated or revoked."  8 C.F.R. § 1.2.  Because the Biden administration paroled Goyo Martinez into the United States, it is clear that he is subject to mandatory detention.  *See Akhtar v. Gonzales*, 450 F.3d 587, 594 & n.31 (5th Cir. 2006) (discussing *Zheng v. Gonzales*, 422 F.3d 98, 117 (3d Cir. 2005)).

But assuming for the sake of argument that Goyo Martinez is not an "arriving alien," he is still an "applicant for admission."  Goyo Martinez argues that Section 1225(b)(2)(A) applies only "to people arriving at U.S. ports of entry or at the U.S. border."  Dkt. No. 1 ¶ 41.  It does not, in his view, govern those aliens "who [have] already entered the United States and [have] been residing here for a period of time."  *Id.*  Why?  Because when it comes to "applicant[s] for admission," the statute requires detention "if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  As

---

³ The respondents urge that Goyo Martinez is a parolee under Section 1182(d)(5)(A), while Goyo Martinez tries to distinguish his Form I-220A release as a distinct form of release.  *Compare* Dkt. Nos. 1 ¶ 43, *with* 7 at 11–12.  The Court thus addresses both scenarios, and finds they lead to the same conclusion.

the argument goes, aliens who have resided in the United States for years after entering illegally are not "seeking admission" to enter and thus are not subject to mandatory detention.

This argument suffers from several flaws. First, it ignores the plain text of the statute. Section 1225 expressly defines "applicant for admission." That definition covers "[a]n alien present in the United States who has not been admitted *or* who arrives in the United States." 8 U.S.C. § 1225(a)(1) (emphasis added). The word "or" is key. As the Supreme Court has often said, "'or' is 'almost always disjunctive.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)). Nothing in Section 1225(b)(2)(A) suggests otherwise. Therefore, the term "applicant[s] for admission" does not just cover arriving aliens; it also covers aliens who, like Goyo Martinez, are present in the United States—for decades even—without admission.

This interpretation tracks how other courts understand the term. In *Jennings*, the Supreme Court explained that, "[u]nder [Section 1225], an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). And the BIA—with its considerable expertise in immigration law—recognizes that Congress' "unconventional" definition of "applicant for admission" includes "not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission."[4] *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743

---

[4] Of course, the Court does not reflexively defer to the BIA's interpretation of Section 1225. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). But given the BIA's specialized knowledge of the INA, the Court may consider its "power to persuade." *Id.* at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

(BIA 2012). At any rate, "[w]hen a statute includes an explicit definition, [the Court] must follow that definition." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)).

Moreover, Goyo Martinez's hair-splitting emphasis on the phrase "seeking admission" elevates form over substance. As the Court previously explained, "[t]here is no material disjunction—by the terms of the statute or the English language—between the concept of 'applying' for something and 'seeking' something." *Garibay-Robledo v. Noem*, No. 1:25-CV-177, 2025 WL 3264482, at *5 (N.D. Tex. Oct. 24, 2025). An "applicant" is "[s]omeone who requests something." *Applicant*, Black's Law Dictionary (12th ed. 2024). Thus, an "applicant for admission," in ordinary English usage, is one who requests (or seeks) admission into the United States. *See Apply (for)*, Merriam-Webster Thesaurus (noting that to "seek" is a synonym of to "apply" for) (last visited December 17, 2025).[5] It is unclear how an alien can apply for admission without seeking it.

Other parts of Section 1225 illustrate the point. Section 1225(a)(3) provides that "[a]ll aliens . . . [w]ho are applicants for admission *or otherwise seeking admission* . . . shall be inspected." (emphasis added); *see also Shi v. Lyons*, __ F. Supp. 3d __ , No. 1:25-CV-274, 2025 WL 3637288, at *5 (S.D. Tex. Dec. 12, 2025) (explaining that Section 1225(a)(3)'s "use of 'otherwise' renders 'applicants for admission' a subset of 'seeking admission'—i.e., the former represents one example of the latter"). And Subsection 1225(a)(5) states that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States." (emphasis added). The logical import of this phrasing is

---

[5] https://www.merriam-webster.com/thesaurus/apply%20(for) [https://perma.cc/7FNU-M7C9].

that an "applicant for admission" is also "seeking admission" under the statute. "Insofar as the term 'applicant for admission' is more passive than 'seeking admission,' this is inherent in the nature of agent nouns and their corresponding gerunds." *Garibay-Robledo*, 2025 WL 3264482, at *5. As such, Section 1225 cannot be read to limit its application to aliens "arriving" at the border. Dkt. No. 1 ¶ 38.

In fact, if Congress wanted to limit Section 1225(b)(2)(A) to arriving aliens, it could have done so. Neighboring provisions in Section 1225 expressly refer to "arriving alien[s]." *See, e.g.*, 8 U.S.C. §§ 1225(a)(2) ("arriving alien who is a stowaway is not eligible to apply for admission or to be admitted"), 1225(d)(2) (addressing "authority to order detention and delivery of arriving aliens" coming to the United States via vessel or aircraft). Yet Congress did not use "arriving alien" in Section 1225(b)(2)(A). Generally, when Congress "uses certain language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (quotation omitted). So the fact that Congress did not refer to "arriving aliens" in Section 1225(b)(2)(A), but did so in other parts of the statute, suggests that the mandatory-detention provision is not limited to aliens arriving at the border.

In sum, the Court agrees with the respondents that Goyo Martinez is subject to mandatory detention under Section 1225(b)(2)(A). True, he is not an arriving alien. But the statutory text is unambiguous: "[A]n alien present in the United States who has not been admitted"—including those who have been merely paroled—is also an "applicant for admission." 8 U.S.C. § 1225(a)(1). And if an "applicant for admission" is "not clearly and beyond a doubt entitled to be admitted," he "shall be detained" pending his removal

– 10 –

proceedings. *Id.* § 1225(b)(2)(A). When a statute is this clear, it must be applied according to its terms. *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

### ii. The statutory history of the INA confirms the Court's reading of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for statutory interpretation. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)). Here, the statutory history of the INA confirms what the plain text already makes clear: aliens who illegally entered the United States and are later apprehended in the interior are "applicant[s] for admission" who must be detained pending removal under Section 1225(b)(2)(A).

In 1996, Congress added the broad definition of "applicant for admission" to the INA in the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Pub. L. No. 104-208, 110 Stat. 3009. "Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'" *Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) (quoting 8 U.S.C. § 1101(a)(13) (1994)). Under this so-called entry doctrine, aliens who snuck into the United States without inspection were entitled to the procedural and substantive protections afforded in deportation proceedings. *Id.* Yet aliens who presented themselves to immigration officials for inspection—say, at a port of entry—were subject to "more summary exclusion proceedings." *Id.* (quotation omitted). This distinction—where aliens who followed the rules and presented for inspection were worse off than those who broke the law—created "a perverse incentive to enter at an unlawful rather than a lawful location." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

IIRIRA did away with this anomaly. Congress replaced the entry doctrine with a criterion based on admission, which it defined as "*lawful* entry . . . after inspection and authorization." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Congress also added Section 1225(a)(1)—the definition of "applicant for admission"—and mandated detention for all such applicants while their removal proceedings play out. *See* 8 U.S.C. § 1225(b)(2)(A). By defining "applicant for admission" to include all aliens who have not been admitted, Congress thus eliminated the previous incentives to enter the country illegally.

Goyo Martinez responds by citing to IIRIRA's House committee report, which says that Section 1226(a) "restates the [previous] provisions . . . regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229 (1996). But the Court's consideration here is *statutory* history, not legislative history. Whatever the House committeemen asserted in their report, the actual change of the statute over time points to greater restrictions rather than preservation of the status quo. At any rate, whether Section 1226 remained untouched matters little, because IIRIRA's significant change was its modification of Section 1225.

Goyo Martinez's interpretation of Section 1225(b)(2)(A) marks a return to the days before IIRIRA. On his view, aliens who bypass inspection and settle down in the interior have more procedural protections than aliens who present themselves for inspection at the border. *See* Dkt. No. 1 ¶ 41. But that, of course, is "the precise situation that Congress intended to do away with by enacting" IIRIRA. *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024). Thus, the INA's statutory history supports the view that Section 1225(b)(2)(A) requires detention without bond for all applicants for admission—including those who entered the country illegally and have resided here for years.

### iii. Goyo Martinez's counterarguments are not persuasive.

Goyo Martinez lodges several additional arguments against applying Section 1225(b)(2)(A). None have merit. He first points to past practice, noting that—until this year—aliens who entered the country illegally and were later placed in standard removal proceedings received bond hearings under Section 1226(a), unless their criminal history made them ineligible. Dkt. No. 1 ¶¶ 31–34. Indeed, after IIRIRA, the Executive Office of Immigration Review issued an interim rule explaining that aliens present in the United States without admission are typically eligible for bond. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). That practice continued for several decades.

Then, in July 2025, the U.S. Department of Homeland Security distributed an internal policy (which was later leaked) titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, ___ F. Supp. 3d ___, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS policy and noting that the government did not contest its authenticity). The policy advised that DHS, in coordination with the U.S. Department of Justice, "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[6] Thus, DHS maintained the position— which the BIA later adopted in *Yajure Hurtado*, 29 I. & N. Dec. at 220—that all aliens who

---

[6] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX]

entered the country without admission are ineligible for bond.[7] According to Goyo Martinez, this new policy "rejected the well-established understanding of the statutory framework and reversed decades of practice." Dkt. No. 1 ¶ 33.

On close review, this background hurts Goyo Martinez more than it helps. The post-IIRIRA interim rule states that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). "The effect of this change," the rule goes on to explain, "is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing statutory authority to deny bond to all non-admitted aliens, the government previously declined to exercise the full extent of its authority under the INA.

When the current Trump Administration took office, it was free to reconsider the government's position. As the BIA explained in *Yajure Hurtado*, neither "DHS or its predecessor, the Immigration and Naturalization Service, previously rais[ed] the current [detention] issue" before the BIA. 29 I. & N. Dec. at 225 n.6. Therefore, while "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," *id.*, that past practice was not required by binding case law. No doubt,

---

[7] On December 18, 2025, the Central District of California purported to vacate the DHS policy under the Administrative Procedure Act. *Maldonado Bautista v. Noem*, No. 5:25-CV-1873, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). But as this Court explained in *Calderon Lopez v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025), that purported relief violated the INA. *Id.* at *10–11. "[B]ecause the Central District lacks jurisdiction under the INA to hear the APA challenge to the DHS policy, its December 18 order lacks the authority necessary to vacate the policy." *Id.* at *7 n.14. Even assuming the DHS policy is now vacated, *Yajure Hurtado*'s "broader, independent decision" mandating detention without bond remains in effect. *Id.* at *1.

"the longstanding practice of the government . . . can inform a court's determination of what the law is." *Loper Bright*, 603 U.S. at 386 (citation modified).  "But a 'long-established practice' does not justify a rule that denies statutory text its fairest reading." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015).  Here, the government's past practice of affording bond hearings to non-admitted aliens cannot overcome the text's clear command.

Next, Goyo Martinez argues that, because he was released into the United States on a Form I-220A, he is entitled to a bond hearing.  Dkt. No. 9 at 3–4.  Form I-220A expressly states that the alien is being released pursuant to Section 1226.  *See Becerra Vargas v. Bondi*, No. SA-25-CV-1023, 2025 WL 3300446, at *1 (W.D. Tex. Nov. 12, 2025).  But this argument does no more than rehash the objection above: ICE once offered release under Section 1226; the law did not require it; indeed, the law prohibits it; and the new administration issued a new policy that brought the policy into compliance.  Because the statute prevents ICE from giving Goyo Martinez the relief he seeks, he cannot "turn[] back the clock" to a time when such relief was available as a matter of practice.  *Surovtsev v. Noem*, No. 1:25-CV-160, 2025 WL 3264479, at *8 (N.D. Tex. Oct. 31, 2025).

Further, Goyo Martinez suggests that the respondents' interpretation of Section 1225 cannot be squared with Section 1226.  *See* Dkt. No. 1 ¶¶ 35–38.  Other courts and petitioners have labeled this a superfluity argument.  *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1151–52 (D. Minn. 2025); *Yajure Hurtado*, 29 I. & N. Dec. at 221–22.  To understand the point, some background is helpful.  Recall that Section 1226(c) provides exceptions to the discretionary-detention rule.  It specifically requires detention of aliens who are inadmissible or removable for involvement in certain criminal offenses.  8 U.S.C. § 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 289.  In early 2025, Congress amended Section 1226(c) with the Laken

Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Under the LRA, the Attorney General must detain any alien who (1) is inadmissible for having entered the country without admission or parole, and (2) is charged with or convicted of specific violent or property-based criminal offenses.  8 U.S.C. § 1226(c)(1)(E)(i)–(ii).  The argument goes like this: The LRA requires detention without bond for a subset of non-admitted aliens present in the United States—that is, those responsible for certain crimes.  Therefore, it cannot be that Section 1225(b)(2)(A)—enacted nearly 30 years before the LRA—already mandates detention for all such aliens.  Otherwise, the LRA's more specific provisions would be superfluous.

      For at least three reasons, the Court is unconvinced.  First, as Judge Charles Eskridge recently explained, "prior Administrations for decades applied [Section] 1226(a) to individuals like" Goyo Martinez.  *Cabanas v. Bondi*, No. 4:25-CV-4830, 2025 WL 3171331, at *6 (S.D. Tex. Nov. 13, 2025).  Therefore, "at the time of enactment, the Laken Riley Act *did* have [real] effect, given that it *required* mandatory detention for criminal, inadmissible aliens who had not been subject to it . . . by longstanding practice of prior Administrations."  *Id.* (emphasis in original).  So, the LRA was not meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226.

      Second, "it is perfectly possible to interpret the provisions" as taking "a 'belt and suspenders approach' to legislation."  *Mejia Olalde v. Noem*, No. 1:25-CV-168, 2025 WL 3131942, at *4 (E.D. Mo. Nov. 10, 2025) (Divine, J.) (quoting *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020)).  Section 1226(c) regulates when the Attorney General must take aliens into custody.  *Id.*  Its detention mandate kicks in "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and

– 16 –

without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). Section 1225, on the other hand, does not include a timeline. *Mejia Olalde*, 2025 WL 3131942, at *4. It only says that the alien "shall be detained." 8 U.S.C. § 1225(b)(2)(A). It is entirely reasonable, then, to interpret the LRA as providing a temporal gloss on the Executive's detention authority. *See Duke v. Univ. of Tex. at El Paso*, 663 F.2d 522, 526 (5th Cir. 1981) (noting that courts should "avoid[]" interpretations "which render parts of a statute inoperative or superfluous"). On that understanding, the LRA adds something that Section 1225(b)(2)(A) lacks.[8]

Lastly, any superfluity, standing alone, is not enough to depart from the clear statutory text. The Supreme Court "has often recognized [that] '[s]ometimes the better overall reading of [a] statute contains some redundancy.'" *Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)). More to the point, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Id.* Indeed, the canons of statutory construction should only "be used to resolve remaining ambiguity," not to inject it where it does not exist. *Moore*, 71 F.4th at 395. Because the statutory text is clear, the Court must apply it as written.

One final point. Goyo Martinez notes that many district courts across the country have rejected the respondents' position. *See* Dkt. No. 1 ¶¶ 36, 41–42. That does not, however, make them right. This case turns on the statutory text—not on the opinions of other district courts, no matter how informative they may be. Even so, Goyo Martinez's

---

[8] Goyo Martinez also argues that the LRA's modification of Section 1226 alone reinforces the conclusion that Section 1226 governs. *See* Dkt. No. 9 at 8. But for the reasons described here, that argument is unpersuasive.

survey of district court authority is not as monolithic as it may seem. Many courts—including several in the Fifth Circuit—have concluded that petitioners like Goyo Martinez are not entitled to a bond hearing.[9] Until a higher authority resolves this issue for good, the Court concludes that the INA authorizes mandatory detention for all non-admitted aliens under Section 1225(b)(2)(A).

> B. The Due Process Clause does not require the government to give Goyo Martinez a bond hearing.

Next is Goyo Martinez's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 54–57. He devotes only a few sentences to this claim, arguing that he "has a fundamental interest in liberty and being free from official restraint," and that his detention "without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process." *Id.* ¶¶ 56–57. He does not clarify whether his challenge is based on substantive or procedural due process. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the

---

[9] *See, e.g.*, *Montelongo Zuniga*, 2025 WL 3755126, at *7; *Cabanas*, 2025 WL 3171331, at *4; *Mejia Olalde*, 2025 WL 3131942, at *2; *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *3 (N.D. Tex. Dec. 13, 2025); *Rodriguez v. Noem*, ___ F. Supp. 3d ___, No. 9:25-CV-320, 2025 WL 3639440, at *2 (E.D. Tex. Dec. 10, 2025); *Sandoval v. Acuna*, 6:25-CV-1467, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, ___ F. Supp. 3d ___, No. 8:25-CV-526, 2025 WL 2780351, at *2 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, ___ F. Supp. 3d ___, No. 3:25-CV-2325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025).

Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Goyo Martinez has "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140; *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").  With Section 1225, Congress set the

procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Goyo Martinez is not entitled to a bond hearing as a matter of procedural due process.

**4.    Conclusion**

In short, Goyo Martinez, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). Nothing about the INA or the Due Process Clause requires a contrary conclusion. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on January 15, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE